IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACCESS 4 ALL, INC., a Florida not for profit corporation, and PETER SPALLUTO, individually, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO GRANDE, INC., a Delaware corporation, <br><br> Defendant. | No. 06 C 5250 <br><br> Hon. Mark Filip |

## MEMORANDUM OPINION AND ORDER
## DENYING WITHOUT PREJUDICE DEFENDANTS' RULE 12(b)(1) MOTION
## TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Access 4 All, Inc., a Florida corporation, and Peter Spalluto, individually (together, "Plaintiffs"), have sued Chicago Grande, Inc. ("Chicago Grande" or "Defendant") for injunctive relief, attorney's fees, and litigation expenses pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"). (D.E. 1 at 1.) Plaintiffs wish to enjoin Defendant from maintaining alleged "architectural barriers" to physically disabled individuals at the Sutton Place Hotel in Chicago, which is located on Defendant's property. (D.E. 1.) The case is before the Court on Defendants' Motion to Dismiss (D.E. 15) for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). For the reasons stated below, Defendant's motion to dismiss is denied without prejudice, subject to the issue being revisited, if and as appropriate, at a later stage in the litigation when an appropriate factual record has been assembled and when the applicable procedural rules permit more fulsome and searching analysis. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As explained below, Plaintiffs' present averments are sufficient to justify moving forward, at least on the basis of the cold record materials submitted; however, once a full and fair chance for discovery concerning Article III standing and

concomitant subject matter jurisdiction issues has been afforded, the parties are free to raise the Article III standing/subject matter jurisdiction issue again, if appropriate. *See, e.g., Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986).

## BACKGROUND

### A.  Introduction

As discussed further below, this case, like many in which courts have been called upon to analyze standing issues under Rule 12(b)(1) in the ADA context, involves "serial litigants"—Mr. Spalluto, an individual who has filed literally scores of ADA suits, as well as Access 4 All, Inc., an organization that has filed geometrically more such suits, many with Mr. Spalluto as a named plaintiff. In the Court's view, the fact that a litigant has filed many other suits does not, in itself at least, suggest that the plaintiff lacks standing, nor does the Court believe that a litigant's motive for filing suit bears on whether the litigant has standing under Article III. Nonetheless, even for sympathetic plaintiffs like ADA plaintiffs, the requirements of Article III must be met, and factual allegations put forth by serial ADA plaintiffs that bear on the propriety of standing must actually prove to be correct for Article III standing to properly lie. As explained below, this case potentially may fall within the parameters of those cases where Article III standing has been found lacking. (It may not, as well; further discovery will likely be necessary to reliably assess this issue.) At this stage of the litigation, the Court credits certain key assertions of Mr. Spalluto about his intentions to visit the hotel in question again as of the time he filed suit; if the record to be developed bears out the validity of those assertions, then there likely is Article III standing, albeit without much room to spare. If, however, those assertions do not bear out in discovery, then there is a substantial chance that this case will join the many others where Article III standing has been found lacking in analogous circumstances.

2

## B. Relevant Facts

Mr. Peter Spalluto ("Spalluto") is a disabled individual who suffers from quadriplegia and is confined to a wheelchair. (D.E. 23 at 1.) Mr. Spalluto is an active member of Access 4 All, Inc. ("Access"), a non-profit Florida corporation that represents the interests of its members by "assuring [that] places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities." (D.E. ¶ 7; *see also* D.E. 23 at 1; D.E. 1 ¶ 2.) Mr. Spalluto lives in Pompano Beach, Florida. (*Id.* ¶ 1.) Mr. Spalluto has filed well over 125 ADA suits—largely in Florida, but also (and seemingly increasingly) elsewhere. Access has filed hundreds of ADA suits, both with Mr. Spalluto and with other serially-filing individual plaintiffs.

Mr. Spalluto alleges that in April 2006 he traveled to Chicago to attend a convention and meet with business contacts. (D.E. 23, Ex. 1 ¶ 2.) Mr. Spalluto stayed for one night at the Defendant's property, the Sutton Place Hotel in Chicago. (D.E. 1 ¶ 3; D.E. 23 at 1.) While at the Sutton Place Hotel, Mr. Spalluto allegedly encountered various architectural barriers that violated the ADA. (D.E. 1 ¶¶ 6, 11 (alleging, *inter alia*, excessively tall counters, insufficient notification devices for the hearing impaired, improperly located signs, and non-compliant showers and bathtubs).) Plaintiffs allege that, because of these violations, Access and Mr. Spalluto have been discriminated against and damaged by Defendant. (*Id.* ¶¶ 6, 7.) Of particular consequence for present purposes, Plaintiffs further allege that they have a "realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA." (*Id.* ¶ 9.)[1]

---

[1] As explained further below, the propriety of standing is analyzed with reference to factual realities as of the time that the Plaintiff(s) first filed suit. *See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). Put differently, post-filing efforts to bolster Article III standing for a case are ineffectual; the proper analysis considers only the facts and circumstances at the time the plaintiff filed suit. *See, e.g., Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1374 (M.D. Fla. 2004) (collecting

3

In addition, and again of particular consequence for present purposes, Plaintiffs allege in the Complaint that Mr. Spalluto "plans to return to the property [*i.e.*, the hotel in question] to avail himself of the goods and services offered to the public at the property" and also "to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination." (*Id.* ¶¶ 6, 9.) In the affidavit attached to the response brief to the motion to dismiss, Mr. Spalluto states that he has "definite plans to return to the hotel, as . . . [he] intend[s] to further pursue . . . [his] business opportunities in Chicago." (D.E. 23, Ex. 1, ¶ 5.) Mr. Spalluto also states that, "[p]rior to filing the Complaint in the instant action, [he] made reservations to return [to the Sutton Place Hotel] on October 13, 2006." (*Id.*) However, Defendant's Financial Controller, Mr. Robert Nassiri, states that from his review of the hotel's records, "it appears Mr. Spalluto . . . has not stayed at the Hotel" before or after his single visit on April 23, 2006. (D.E. 15, Ex. A.)

Defendant alleges that Mr. Spalluto's lone visit to the Sutton Place Hotel "constitutes but one stop on plaintiffs' drive-by litigation spree." (*Id.* at 2.) In support of this contention, Defendant has provided the Court with docket listings of the federal cases in which Mr. Spalluto and Access are parties. (*Id.*, Ex. B (cases filed by Mr. Spalluto), Ex. C (cases filed by Access).) According to the docket listings, Mr. Spalluto has filed at least 133 complaints in the federal courts in the last nine years, and Access has filed at least 540 complaints in the federal courts during the same period. (*Id.*) In its motion to dismiss and supporting memoranda, Defendant cites several cases in which Article III standing has been found lacking in such cases. Plaintiffs respond by citing several cases where Article III standing has properly existed. As explained further below, whether this case is more fairly grouped with those where Article III standing was found to be present, as opposed to those where Article III standing was found to be lacking,

---

cases).

4

appears to turn on whether Plaintiffs' various factual assertions ultimately prove to be well-founded and credible.

Seventh Circuit precedent teaches that where there are disputed factual issues concerning the propriety of subject matter jurisdiction, the Court must resolve those factual disputes. In this regard, the Seventh Circuit has instructed: "No format is specified by statute or rule for evidentiary hearings on jurisdiction; any rational mode of inquiry will do. But the upshot must be a decision by the district court on jurisdiction-not a decision that there is or is not enough evidence to have a trial on the question." *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986) (collecting authorities); *accord, e.g., Lujan*, 504 U.S. at 561 (stating that prerequisites for maintaining Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [and therefore] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). The Court agrees with Plaintiffs that the validity of their factual averments concerning the standing analysis (including whether, at the time the lawsuit was filed, Mr. Spalluto sincerely had a concrete intention to return to the hotel in question within the reasonable future) cannot best be evaluated on the basis of the limited and conflicting cold evidentiary presentations. The Court will allow the case to go forward for discovery concerning the propriety of standing; if Plaintiffs' averments prove to be incorrect or are not credible, then Article III standing may ultimately be found to be lacking. For now, however, Defendant's motion to dismiss is denied without prejudice.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *See,*

*e.g., Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). In considering such a motion, "'courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Sanner v. Bd. of Trade*, 62 F.3d 918, 925 (7th Cir. 1995) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975), and collecting cases). However, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (collecting cases; internal quotation marks and citation omitted). When a party moves for dismissal under Rule 12(b)(1), and when the movant provides evidentiary materials in support of its factual assertions, the nonmovant must provide competent evidentiary support for its own competing jurisdictional averments. *See, e.g., Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) (collecting cases); *Kontos*, 826 F.2d at 576 (collecting cases). The Seventh Circuit has interpreted "competent proof" as "requiring a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) (affirming dismissal of complaint for lack of standing); *accord, e.g., United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003) ("And the court is free to weigh the evidence to determine whether jurisdiction has been established. Factual findings rendered during this process are reviewed for clear error.") (collecting cases; internal citations omitted). Although Plaintiffs' claims survive the Defendant's challenge to standing at this stage, Plaintiffs ultimately bear the burden of proving their allegations of standing at trial or after discovery is complete before the court conclusively will find that the plaintiffs have standing to bring his suit. *See, e.g., Lujan*, 504 U.S. at 561; *D'Lil v. Stardust Vacation Club*, No.

CIV-S-00-1496DFL PAN, 2001 WL 1825832, at *4 n.3 (E.D. Cal. Dec. 21, 2001) (Levi, J.) (citing *Lujan*, 504 U.S. at 561).

## DISCUSSION

Title III of the ADA grants a private right of action to "any person who is being subjected to discrimination on the basis of disability" or "who has reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1); *Disabled in Action v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518(MBM), 2003 WL 1751785, at *6 (S.D.N.Y. April 2, 2003) (Mukasey, J.). Discrimination includes "a failure to remove architectural barriers . . . that are structural in nature, in existing facilities . . . ." 42 U.S.C. § 12182(b)(2)(A)(iv). However, even if Plaintiffs have been injured within the meaning of Title III of the ADA, they must also show that their injuries satisfy the standing requirements of Article III of the Constitution to establish subject matter jurisdiction. *See Trump*, 2003 WL 1751785 at *6 (even if disabled plaintiffs have demonstrated an injury under the ADA, they must also show standing under Article III); *see also, e.g., Common Cause v. Fed. Election Comm'n*, 108 F.3d 413, 419 (D.C. Cir. 1997) (per curiam) ("[The statute in question] does not confer standing; it confers a right to sue upon parties who otherwise already have standing."); *D'Lil*, 2001 WL 1825832, at *3 n.2 (coverage within the ADA is a separate question of whether Article III standing exists in the first instance ).

### A. Mr. Spalluto's Standing Is Sufficiently Established, at Least at This Stage of The Proceedings, With A Cold Factual Record and No Jurisdictional Discovery Having Occurred

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. Precedent teaches that one of the fundamental principles which separates properly justiciable cases and controversies from other disputes or matters is the

7

doctrine of standing. *See, e.g., Lujan*, 504 U.S. at 560 (citation omitted); *Bensman v. U.S. Postal Servs.*, 408 F.3d 945, 949 (7th Cir. 2005). When looking at a standing question, a court must analyze whether standing exists at the time plaintiff files suit. *See, e.g., Newman-Green*, 490 U.S. at 830; *Lujan*, 504 U.S. at 564 n.4.

The "irreducible constitutional minimum" of standing contains three elements. *Lujan*, 504 U.S. at 560. To satisfy Article III's standing requirements, Plaintiffs must demonstrate that they have (1) suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) (collecting Supreme Court precedents).

The Supreme Court described the requirements of an "injury in fact" in *Lujan, supra*. In that case, several organizations dedicated to the preservation of wildlife filed suit against the Secretary of the Interior, seeking a declaratory judgment that the Secretary had erred as to the geographic scope of a new regulation and an injunction requiring the Secretary to promulgate a new regulatory interpretation. *See id.*, 504 U.S. at 559. The Supreme Court held that the plaintiff organizations had not shown that they had been "injured in fact" because they had not demonstrated that the defendant's conduct would "directly" affect members of the plaintiff organizations apart from their "special interest" in wildlife. *Id.* at 563. One member stated that she had visited Egypt in 1986 and "observed the traditional habitat of the endangered [N]ile crocodile there and intend[s] to do so again, and hope[s] to observe the crocodile directly." *Id.* at 563. Another member averred that she had traveled to Sri Lanka in 1981 to observe the traditional habitat of endangered species, and that she was harmed by the Secretary's actions

because she "intend[ed] to return to Sri Lanka in the future" and hoped to see an endangered animal. *Id.* at 563. However, this second member confessed she had no current plans to return to Sri Lanka, but simply planned to return "in the future." *Id.* at 564. These two members' statements, the Supreme Court stated, "plainly contain no facts . . . showing how damage to the species will produce 'imminent' injury" to organization members. *Id.* at 564. "'Past exposure to illegal conduct'" the Supreme Court said, "'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (further internal quotation marks omitted)). Moreover, mere "some day intentions–without any description of concrete plans, or indeed even any specification of *when* the some day will be"–did not support a finding of the "actual or imminent" harm required to show an "injury in fact." *Id.* at 564.

*Lujan* teaches that a plaintiff must allege a concrete continuing or future injury to seek review in the federal courts. *Id.* at 563-64; *see also, e.g.*, *Citizens for a Better Environment*, 523 U.S. at 109 (denying standing because past exposure to unlawful conduct, without "continuing, present adverse effects," does not present a case or controversy); *accord id.* ("[O]ur clear precedent requir[es] that the allegations of future injury be particular and concrete"). This requirement is not one that federal courts are free to overlook or soft-pedal, even for a sympathetic litigant like Mr. Spalluto. Rather, *Lujan* stresses that the requirement of a concrete continuing or future injury is to be enforced seriously, as this requirement is "a principle fundamental to the separate and distinct constitutional role of the Third Branch – one of the essential elements that identifies those 'Cases' and 'Controversies' that are the business of the courts rather than of the political branches." *Id.* at 576. Mindful of the importance of the injury-in-fact requirement, the Supreme Court held that a plaintiff's mere "some day intentions" to

return to an allegedly affected place were not sufficient to establish that a plaintiff had suffered an injury in fact. *Id.* at 564; *accord, e.g., Bensman*, 408 F.3d at 962. In this regard, *Lujan* makes clear that in the instant case, Mr. Spalluto must allege that he is suffering from or will suffer a concrete injury due to Defendant's conduct, and he must substantiate this claim with more than just "some day intentions" to return to the allegedly non-compliant location. *Lujan*, 504 U.S. at 564; *Bensman*, 408 F.3d at 961-62 (noting that plaintiff could not establish standing merely on the basis of past visits to affected land, and that plaintiff's vague "some day intentions" to return to the affected land could not support a finding of an "actual or imminent" injury).

The Supreme Court has not provided guidance about standing issues in ADA cases such as the present one. However, the lower courts have frequently been required to confront the question of standing in this context, particularly with respect to litigants like Mr. Spalluto, who has filed over 130 ADA cases, and Access, which has filed several hundred such cases and exists, at least in large part, to file lawsuits advancing ADA claims.[2] The Court reviews this precedent in considering whether the instant suit can properly be adjudicated.

Many lower court cases have wrestled with the question of Article III standing in the ADA context. For example, in *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368 (M.D. Fla. 2004), the court dismissed a disabled plaintiff's complaint for lack of standing. The plaintiff, along with his counsel, had previously filed some four dozen ADA suits—many against hotels plaintiff had allegedly visited. *Id.* at 1369. In so ruling, the district court held that

> Mr. Brother has failed to satisfy the requirements of Article III. While he asserts that
> he plans to return to the establishment, the record evidence indicates otherwise: that Mr.

---

[2] As previously explained, the Court does not believe that the fact that a plaintiff files many law suits suggests that it lacks Article III standing; however, at the same time, the fact that a plaintiff files many law suits, or has sympathetic reasons for filing them, does not absolve a plaintiff from satisfying Article III standing requirements nor from proving the validity of the factual representations it makes (and upon which it relies for its assertion of standing).

> Brother's arrangements are speculative at best, failing to evidence a credible threat of future injury.

*Id.* at 1373. In this regard, the Court noted that the plaintiff lived 280 miles away from the hotel, in a different part of the State of Florida, and that plaintiff admitted that he traveled to the greater Orlando area (where the hotel in question was located) only about twice a year. *Id.* The district court further found that the plaintiff lacked "a continuing connection" to the hotel in question, as he had never previously attempted to stay at the hotel before the single time that predated his suit. *Id.* Nor had the plaintiff visited the hotel since the lawsuit was filed. *Id.* The district court also noted that there were countless other hotels in the Orlando area that were closer to the plaintiff's seeming destinations there, including a number of hotels that the plaintiff had previously sued concerning alleged ADA deficiencies. *Id.* The district court found that the fact that plaintiff made a reservation to stay at the hotel after he filed his complaint was "immaterial," *id.*, because "'Article III standing must be determined as of the time at which the plaintiff's complaint is filed.'" *Id.* (quoting *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1275 (11th Cir. 2003)); *see also Brother* 331 F. Supp. 2d at 1374 (collecting cases and stating that, "[b]elated efforts to bolster standing therefore are futile") (internal brackets omitted). In this regard, the *Brother* district court rejected the plaintiff's "professed intent to return to the [hotel] property," noting that the plaintiff had similarly expressed such an intent concerning the prior fifty-four motels he had sued for alleged ADA deficiencies. *Id.* at 1374-75 (citing *Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1284-85 (M.D. Fla. 2004) (finding lack of standing for plaintiff who filed seriatim ADA suits where the plaintiff's professed intent to return to the property was not credible)).

Similarly, *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250 (M.D. Fla. 2003), dismissed for lack of Article III standing the ADA claim of a plaintiff who lived hundreds of

11

miles from the hotel at issue, had no concrete plans to return to the hotel in question, had little meaningful connection to the geographic area in question, and who more logically would stay, if he returned, in any number of hotels against which he previously had filed ADA suits. *Id.* at 1253. The *Rosenkrantz* court held that "[p]laintiff's future travel plans [concerning the hotel at issue] are just 'some day' intentions . . . . Plaintiff's 'future injury' is identical to the injury alleged in *Lujan* and, therefore, [p]laintiff has failed to establish standing to bring this suit." *Id.*

Likewise, *D'Lil v. Best Western Encina Lodge and Suites*, 415 F. Supp. 2d 1048 (C.D. Cal. 2006), dismissed for lack of standing the suit of a serial ADA plaintiff who had filed numerous such suits. *Id.* at 1060. In so finding, the district court taught that while the "futility" doctrine under the ADA potentially permits a disabled plaintiff to sue where he or she actually would use or return to an inaccessible facility if alleged barriers were removed, that futility doctrine still requires that the "futility" assertion must be true—in that the plaintiff actually will return to or visit the site in question if the alleged barriers were eliminated. *See id.* at 1052 ("[O]nce a plaintiff with a disability has concluded that the facility is not accessible, she need not struggle with the inaccessibility to establish injury. But she must nevertheless establish that-but for the inaccessibility-she is likely to return.") (citing *Lujan*, 504 U.S. at 560-61). At least some of the factors that *D'Lil* identified as typically being employed to evaluate the propriety of standing—such as the history of plaintiff's patronage of a particular location, and the proximity of the place in question to the plaintiff's residence or location of frequent travel—would appear to cut against Mr. Spalluto's standing here. *Id.* at 1053. The two other factors *D'Lil* analyzed—the definiteness of the plaintiff's plans to return, and the plaintiff's frequency of travel near the defendant establishment (*id.*)—also would not necessarily appear to support Mr. Spalluto, although the record on these issues is not clear. Although, as explained below, the

Court finds that Mr. Spalluto has sufficiently established standing for present purposes, at a minimum, it would seem that *D'Lil* teaches that Mr. Spalluto will need to establish, when appropriate discovery has been completed, that his "professed intent to return [to Defendant's motel] is sincere and supported by the factual circumstances of the case." *Id.* at 1054; *see also id.* ("Many courts have concluded that a 'serial plaintiff's extensive litigation history can undermine his professed intent to return.'") (collecting cases and quoting *Molski v. Mandarin Touch*, 385 F. Supp. 2d 1042, 1046 (C.D. Cal. 2005)); *id.* at 1058 ("In short, it appears Plaintiff declares that she intends to return to nearly every place she sues (as indeed she must in order to establish standing in federal court). While some of these allegations may have initially been accepted in other cases without question, even at the trial stage, as more suits are filed and more- and contradictory-allegations are made, credibility concerns increase."). That is so because, but for Mr. Spalluto's having made (and cancelled) reservations to allegedly return to Defendant's establishment prior to the filing of the instant suit, it appears doubtful that Mr. Spalluto would have survived the motion to dismiss for lack of standing.

While the Court will not simply chronicle the many similar cases in this area of law, the Court will present one more illustrative and representative example, *Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.*, No. Civ.A.3:05-CV-1307-G, 2005 WL 2989307, (N.D. Tex. Nov. 5, 2005). The opinion set forth the requisite benchmarks for evaluating Article III standing challenges—such as that "standing must exist at the time an action is commenced," *id.* at *3 (citing *Lujan*, 504 U.S. at 569-70 n.4)); that efforts after filing "to bolster standing are futile," *id.* (collecting cases)—and it similarly applied the factors identified in *D'Lil*: (1) the proximity of the defendant's business to the plaintiff's residence; (2) the level of plaintiff's past patronage of the defendant's business; (3) the definitiveness of plaintiff's plans to return; and (4)

13

the plaintiff's frequency of travel near the defendant. *Id.* *3 (collecting cases). The facts of the instant case appear to be rather similar to those in *Wintergreen* (where a motion to dismiss Access 4 All's suit was granted for lack of standing); the *Wintergreen* case is fairly distinguished, at least at this stage of the proceedings, because Mr. Spalluto made a reservation to return to Defendant's establishment *before* filing suit, albeit a reservation he never used because he ultimately cancelled the trip. While this Court presently credits, at least on the basis of the present record, Mr. Spalluto's contentions that he still intends to return to the hotel in the near future, and that he simply has not returned because of the alleged ADA barriers there, further discovery will reveal whether these sorts of contentions are credible or not. For example, if Mr. Spalluto has made similar claims in some of his other 130+ lawsuits, it will obviously be most relevant to see if he actually has made good on his representations. If so, his standing would likely be secure; if not, then standing likely cannot be maintained. *Accord, e.g., Access 4 All v. Oak Spring, Inc.*, No. 504CV75OCGRJ, 2005 WL 1212663, *5-6 (M.D. Fla. 2005) (dismissing ADA claim for lack of Article III standing of Access and serial individual plaintiff where the plaintiff had no meaningful connection to hotel in question and thus "no real likelihood of suffering future injury at the hands of the Defendant.").

By way of comparison, in similar sorts of cases where courts *have* found that Article III standing existed, the disabled plaintiff has been able to assert a particular, credible reason for his desire to return to the property in question. For example, in *Disabled in Action v. Trump Int'l Hotel & Tower, supra*, two individual plaintiffs sued Trump International Hotel and Tower, alleging that various features of the building, which also housed Jean Georges restaurant, were not sufficiently accessible to the disabled, in violation of the ADA. *Trump*, 2003 WL 1751785 at *1. The court denied summary judgment to the defendant on the Article III standing issue. *Id.*

at *4, 8. It found that plaintiffs' allegations that they desired to return to defendant's property to eat at Jean Georges and were being deterred by the existing architectural barriers were "plausible," given that plaintiffs lived in New York, had been to the restaurant in the past, and already were dining at other restaurants in the neighborhood in question. *Id.* at *4, 8; *see also Access 4 All, Inc. v. Absecon Hospitality Corp.*, No. 04-6060(JEI), 2006 WL 3109966, at *6-7 (D.N.J. Oct. 30, 2006) (denying summary judgment to defendant on standing issue because plaintiff had established a likelihood to return to defendant's hotel (and thus a concrete future injury) by revisiting the hotel and testifying that he liked gambling in a casino near the hotel).

In its motion to dismiss, Defendant argues that Plaintiffs "have not alleged (and can not reasonably allege) that they have concrete plans to visit the [Defendant's] Hotel on such a basis that the threat of future injury is sufficiently real and imminent so as to give rise to standing." (D.E. 15 at 2.) Mr. Spalluto's supposed hopes or plans to return, Defendant claims, are similar to the "some day" statements the Supreme Court found insufficient to establish standing in *Lujan*. (D.E. 15 at 5.) It is true that Plaintiffs' Complaint does not indicate that Mr. Spalluto has any tie to the Chicago area that would make his return to the Sutton Place Hotel likely. (D.E. 1 ¶¶ 1-17 (failing to allege that Spalluto has family, does business, or has any other personal connection to the Chicago area).) Defendant is correct that, without a more specific plan for Mr. Spalluto to return to Defendant's property, the Complaint's assertions about the future may be insufficient to support standing, at least if Mr. Spalluto has not actually returned to other properties he has sued in the past to use them. *See Lujan*, 504 U.S. at 564 (plaintiffs' professions of an "inten[t] to return to the places they had visited before–where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species–is simply not enough" to support a finding of the actual or imminent injury that precedent requires).

However, in response to the motion to dismiss, Mr. Spalluto has submitted an affidavit in which he states that he has "definite plans to return to the hotel, as [he] intend[s] to further pursue [his] business opportunities in Chicago." (D.E. 23, Ex. 1 at 1-2.) He also states that, "[p]rior to the filing of the Complaint in the instant action, [he] made reservations to return [to the Sutton Place Hotel] on October 13, 2006." (D.E. 23, Ex. 1 at 2.) The Court is not certain why Plaintiffs did not include these allegations in their initial Complaint, but the Court will accept them as true at this stage of the proceedings, when no discovery has been afforded that will allow a fair evaluation of the validity of the professed intention to return at the time of the filing of the complaint. Plaintiff's statement that he wishes to pursue business opportunities in Chicago is helpful to his assertion of standing. As explained above, where a plaintiff can assert a specific concrete reason why he will return or wishes to return to defendant's property, courts have found that this cuts against a finding of the vague "some day" intentions found deficient in *Lujan*. *See, e.g., Trump*, 2003 WL 1751785 at *1 (plaintiffs wished to eat at a restaurant located at defendant's property near plaintiffs' home); *Absecon Hospitality Corp.*, 2006 WL 3109966 at *6-7 (plaintiff wished to gamble at a casino near the defendant's hotel). Critically, Mr. Spalluto's statement that he made reservations for a future visit to the Defendant's hotel *before* the Complaint was filed (D.E. 23, Ex. 1 ¶ 5) further supports his professed intent to return to the premises. Plaintiff's assertions–that Mr. Spalluto wishes to pursue business opportunities in Chicago and made future reservations to visit the Sutton Place Hotel–sufficiently justify moving forward to more fulsome discovery concerning the propriety of standing. (Put differently, the limited cold record presented does not, in this Court's view, justify Defendant's suggestion that the case should be dismissed at the threshold for clear lack of standing under Article III.) Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore respectfully

denied without prejudice.³ However, as explained above, after jurisdictional discovery is complete, the parties are free to renew the issue, at which time the appropriate evidentiary analysis can fairly be done (assuming no hearing is needed, which will be conducted if appropriate). *See, e.g., Crawford*, 796 F.2d at 929; *see also Lujan*, 504 U.S. at 561; *Brother*, 331 F. Supp. 2d at 1374 (granting summary judgment to defendant based on lack of standing and noting that "in view of [plaintiff's] litigation history, [plaintiff's] professed intent to return to the property is insufficient" to establish a credible threat of future injury); *D'Lil*, 415 F. Supp. 2d at 1058 (questioning the credibility of serial plaintiff who "declares that she intends to return to nearly every place she sues" under the ADA).

**B.   Access's Standing**

Access has joined as a plaintiff, and Defendant has also moved to dismiss its claim for lack of Article III standing. As explained below, at least insofar as Mr. Spalluto has sufficiently established standing for his claim at this stage of the proceedings, Access also has sufficiently established associational standing, at least at this stage of the proceedings.

An organization has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Sanner*, 62 F.3d at 922.

Access has satisfied the first prong of the *Hunt* test for associational standing because Mr. Spalluto, one of Access's members, has sufficiently established standing (at least at this pre-

---

³ Plaintiff Spalluto may only maintain his suit with regard to ADA violations that pertain to his stated disability. *See, e.g., Lujan*, 504 U.S. at 560 n.1 (plaintiff must demonstrate a particularized injury, *i.e.* "the injury must affect the plaintiff in a personal and individual way"); *Access 4 All v. Oak Spring, Inc.*, No. 504CV75OCGRJ, 2005 WL 1212663, at *6 (M.D. Fla. May 20, 2005) ("plaintiff lacks standing to bring any claims involving barriers that do not affect someone with his same disabilities").

discovery stage of the proceedings) to sue in his own right. Access has also satisfied the second prong. The interests that Access seeks to vindicate in this suit–putatively, the right of Access members to visit Defendant's place of public accommodation without discrimination–are germane to Access's stated purpose, which is "to represent the interests of its members by assuring [that] places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities." (D.E. 1, ¶ 7.)

The third prong of the *Hunt* test requires the plaintiff organization to show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Defendants claim that this prong presents an "insurmountable obstacle" to Access's organizational standing. (D.E. 15 at 10.)

As the Seventh Circuit has noted, if viewed in isolation, the third prong of the *Hunt* test might lead to the conclusion that "associational standing is not permitted if participation by *any* members of the association would be necessary." *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 601 (7th Cir. 1993) (emphasis in original) (discussing *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 90 (3d Cir. 1991) (Alito, J.)). However, the Seventh Circuit and several other courts have recognized that the third prong of the *Hunt* test appears to paraphrase the Supreme Court's earlier, more detailed statement in *Warth v. Seldin*, 422 U.S. 490 (1975). *See Retired Chicago Police Association*, 7 F.3d at 601; *accord, e.g., Hospital Council*, 949 F.2d at 90. In *Warth*, the Supreme Court stated that, "[s]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction." *Warth*, 422 U.S. at 511. *Warth*'s language appears to allow associational standing even if *some* individual

participation is required, so long as the participation of *each* affected member is not required. *Id.*; *accord Retired Chicago Police Association*, 7 F.3d at 601; *Hospital Council*, 949 F.2d at 90.

In this case, one of Access's members is already a party to the suit, and he has provided the court with an affidavit regarding the architectural barriers he allegedly encountered on Defendant's property. (*See* D.E. 23, Ex. 1.) Thus, some individual member participation has already occurred in this case. As *Retired Chicago Police Association* indicates, however, this individual participation is not a bar to Access's associational standing. *See id.*, 7 F.3d at 603. Access has thus satisfied the Seventh Circuit's interpretation of *Hunt*'s third prong, and it therefore has associational standing—at least insofar, at the present stage of the proceedings, that Mr. Spalluto has established standing under the first prong of the *Hunt* analysis. If and when Mr. Spalluto's standing requires reevaluation (*i.e.*, in light of any evidentiary developments after both sides have had a chance for fair and appropriate jurisdictional discovery), the Court can make any appropriate reexamination of the propriety of Access's standing under the *Hunt* test.

## CONCLUSION

For the reasons stated above, the Court respectfully denies Defendant's motion to dismiss without prejudice.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 5/10/07